UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| MAURICE PLEDGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15-1251 |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and presently incarcerated at Hill Correctional Center brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to a serious medical need. The matter comes before this Court for ruling on the Defendants' Motions for Summary Judgment. (Docs. 55, 61). The motions are granted.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS[1]

Plaintiff was incarcerated at Pontiac Correctional Center ("Pontiac") from February 23, 2011 through March 16, 2013. Defendants were employed at the facility in the following capacities: Defendant Tilden was a physician; Defendant Ojelade was a

---

[1] Plaintiff did not file a response to the Defendants' motions for summary judgment despite being given additional time to do so and being warned of the consequences should he not respond. See (Doc. 63); Text Order entered May 1, 2017. Therefore, the Court will consider Defendants' assertions of fact as undisputed for purposes of this ruling. See Fed. R. Civ. P. 56(e)(2).

physician's assistant; Defendant Pierce was the Warden; and, Defendant Birkel was a medical technician.

Defendant Tilden first examined Plaintiff on March 1, 2011 for complaints of hearing loss and loss of balance with occasional vertigo. Based upon the symptoms Plaintiff reported, Defendant Tilden ordered a cranial x-ray, noted the possibility that more tests would be required should these symptoms persist, and scheduled a follow-up appointment in 30 days. The cranial x-ray disclosed nothing significant.

Nonetheless, when Plaintiff reported similar symptoms at his March 30, 2011 follow-up appointment, Defendant Tilden ordered additional x-rays, lab work, and sought approval for an MRI and consultation with a specialist. Defendant Tilden received approval the next day. Plaintiff underwent the MRI, and he was examined by specialists at the neurology clinic at the University of Illinois at Chicago (UIC) within the next several weeks.

In between Defendant Tilden's first and second examinations, Plaintiff filed a grievance dated March 24, 2011 seeking a referral to an ear, nose, and throat doctor and the results of his x-rays. After Defendant Pierce declined to expedite the grievance as an

emergency, Plaintiff submitted the grievance via the normal channels. The grievance officer ultimately recommended denial of the grievance in late April 2011 after medical staff reported that Plaintiff was receiving treatment. Defendant Pierce concurred with this recommendation.

Defendant Tilden reviewed Plaintiff's MRI results the day they were received at the prison. Two days later, on May 15, 2011, Defendant Tilden discussed the results with Plaintiff. The diagnosis: an "enhancing mass approximately 4 cm in diameter at the left pontine angle that extended into the left internal auditory canal most consistent with a vestibular schwannoma." In layman's terms, Plaintiff had a non-cancerous tumor in his ear canal.

Plaintiff was thereafter scheduled and taken to examinations with a neurologist and neurosurgeon at UIC, the latter of whom recommended surgery to remove the tumor. Four days later, on June 20, 2011, Plaintiff underwent a successful surgery. He remained at UIC for the next month.

Upon Plaintiff's discharge, the UIC doctors recommended prescriptions for Tylenol 3, Dexamethasone, Pepcid, ocular solution every two hours, and ocular lubricant every four hours. Plaintiff

was admitted to the infirmary when he returned to Pontiac, and Defendant Tilden prescribed the recommended medications. Plaintiff remained in the infirmary for approximately one month before he was released back into general population.

On August 26, 2011, Plaintiff returned to UIC. UIC doctors ruled out a potential complication arising from the surgery and recommended that Plaintiff return for a follow-up examination in one year. In August 2012, the UIC specialist noted that the tumor had not returned and that Plaintiff's recovery was going well. Plaintiff admitted in his deposition that he has received regular checkups at UIC since the surgery. Pl.'s Dep. 55:8-12.

In October 2011, Defendant Ojelade extended Plaintiff's then-existing prescription for Motrin for an additional three months. In May 2012, Defendant Ojelade noted that Plaintiff had normal muscle tone and strength in his extremities. Defendant Ojelade again prescribed Motrin.

Plaintiff testified that he requested medical treatment from Defendant Birkel on February 4, 2013 for migraine headaches to no avail. Pl.'s Dep. 70:13-72:6. According to the medical records, Plaintiff was examined on February 1, 2013 for the same condition

and the notes indicate that the physician's assistant referred Plaintiff to the medical director and prescribed Motrin. (Doc. 62-2 at 22).

Plaintiff was transferred to Menard Correctional Center on March 16, 2013.

## ANALYSIS

### Statute of Limitations

Defendants Tilden and Pierce assert a statute of limitations defense. The limitations period for Section 1983 claims is the same as the limitations period for personal injury claims arising under state law. Cesal v. Moats, 851 F.3d 714, 721-22 (7th Cir. 2017). The applicable statute of limitations in Illinois is two years. 735 ILCS 5/13-202. The limitations period is tolled while a prisoner pursues relief through the administrative grievance process. Johnson v. Rivera, 272 F.3d 519, 521 (7th Cir. 2001). Plaintiff filed this lawsuit on June 18, 2015.

The Court must first determine when Plaintiff's claims accrued. Section 1983 claims alleging deliberate indifference to a serious medical need accrue "when the plaintiff knows of his physical injury and its cause even if the full extent or severity of the

injury is not yet known." Devbrow v. Kalu, 705 F.3d 765, 768 (7th Cir. 2013). Plaintiff's claims against Defendant Tilden accrued on May 15, 2011 when Plaintiff learned of his diagnosis. The limitations period was tolled until July 6, 2011, when Plaintiff completed the final step of the grievance process. Thus, Plaintiff had until July 6, 2013 to file a lawsuit against Defendant Tilden for claims of failure to diagnose and failure to provide adequate follow-up case. Plaintiff failed to do so.

As to Defendant Pierce, the sole action about which Plaintiff complains occurred in late April 2011 when Defendant Pierce concurred with the grievance officer's recommendation to deny Plaintiff's March 24, 2011 grievance. The Court is not aware of any separate grievances Plaintiff filed with respect to this issue, and the only evidence in the record shows that the grievance process concluded on July 6, 2011. Similar to the claims against Defendant Tilden, the limitations period to bring these claims expired prior to Plaintiff's initiation of this lawsuit.

Accordingly, the Court finds that Plaintiff's claims against Defendants Tilden and Pierce are time-barred under the applicable statute of limitations.

## Medical Treatment

Inmates are entitled to adequate medical care under the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need.  Id. at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient.  McDonald v. Hardy, 821 F.3d 882, 888 (7th Cir. 2016) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014), and Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008)).

Liability attaches when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.

In the medical context, treating physicians are entitled to deference. Zaya v. Sood, 836 F.3d 800, 805 (7th Cir. 2016). To constitute deliberate indifference, a treatment decision must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Petties v. Carter, 836 F.3d 722, 729 (7th Cir. 2016) (internal quotations omitted). In other words, a medical professional is deliberately indifferent only if "'no minimally competent professional would have so responded under those circumstances.'" Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2008) (quoting Collignon v. Milwaukee Cnty., 163 F.3d 982, 988 (7th Cir. 1998)).

Several circumstances could lead to an inference that a medical professional failed to exercise the appropriate judgment so as to avoid liability under the Eighth Amendment. These include: persisting in a course of treatment known to be ineffective; failure to follow an existing protocol; inexplicable delays in treatment without penological justification; and, refusal to follow a specialist's recommendations. Petties, 836 F.3d at 729-30.

When Plaintiff symptoms did not subside following Defendant Tilden's first round of diagnostic testing and treatment, Defendant Tilden ordered additional testing and sought approval for a consultation with an outside specialist. Plaintiff was taken to each appointment with the specialist, underwent surgery, and remained at UIC for a month following the procedure. Once discharged from UIC, Defendant Tilden prescribed all the recommended medications and monitored Plaintiff's condition in the infirmary for the next month or so. When a potential complication arose, Plaintiff was taken back to UIC and medically cleared.

With respect to Defendant Ojelade and Defendant Birkel, Plaintiff was already under the care of the treating physician at the relevant times. Nothing in the record suggests that Plaintiff required additional treatment following Defendant Ojelade's examinations, other than an extension of the then-current medications, or that Plaintiff presented symptoms to Defendant Birkel more serious than the headaches for which he was already prescribed Motrin.

Accordingly, the Court finds that no reasonable juror could conclude that Defendants Tilden, Ojelade, and Birkel acted with deliberate indifference.

**Defendant Pierce**

Plaintiff alleged that Defendant Pierce failed to investigate his grievances about medical treatment. At the time Plaintiff filed his March 24, 2011 grievance, Plaintiff had already been examined by Defendant Tilden and he was scheduled for a follow-up appointment approximately a week later.

The prevailing case law in the Seventh Circuit absolves nonmedical prison officials of constitutional liability in cases where the official deferred to the judgment of the medical staff. See Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) (nonmedical prison officials "are entitled to defer to the judgment of jail health professionals" so long as the inmate's complaints are not ignored (citations omitted)); Hayes v. Snyder, 546 F.3d 516, 527 (7th Cir. 2008) (no deliberate indifference where nonmedical prison official investigated inmate's complaints and referred then to medical providers who could be expected to address the concerns); Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005) (no deliberate

indifference where nonmedical prison official referred inmate complaints to medical providers). In other words, "the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so." Berry, 604 F.3d at 440.

Here, the grievance officer's recommendation stated that, per the medical director response dated April 25, 2011, Plaintiff was currently receiving treatment. At the time Defendant Pierce would have reviewed this grievance recommendation, Plaintiff would have already received approval for an MRI and consultation with an outside specialist. With this information in hand, Defendant Pierce would have been entitled to defer to the judgment of the medical staff.

Defendant Pierce's actions were consistent with those of the prison officials in the cases cited above. See id. (nonmedical prison official "consulted with the medical staff, forwarded [the inmate's] concerns to DOC, and timely responded...."); Hayes, 546 F.3d at 520 (Assistant Warden consulted with medical staff on several occasions and referred concerns to medical providers); Greeno, 414

F.3d at 655-56 (official reviewed complaints and verified with medical officials that inmate was receiving treatment). Therefore, the Court finds that no reasonable juror could find that Defendant Pierce was deliberately indifferent.

## Wexford Health Sources

Plaintiff also asserted a claim against Wexford Health Sources ("Wexford"), the private corporation contracted to provide medical services to Illinois prisons. Because Plaintiff did not suffer an underlying constitutional deprivation, Wexford cannot be held liable for damages. *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).

## Conclusion

Plaintiff's claims against Defendant Tilden and Defendant Pierce are barred by the statute of limitations. Even if they were not, no reasonable juror could conclude that they, or the other defendants, acted with deliberate indifference. Accordingly, the Court finds that the Defendants are entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED:**

1) Defendants' Motions for Summary Judgment [55][61] are GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated, with the parties to bear their own costs. Plaintiff remains responsible for the $350.00 filing fee.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. See FED. R. APP. P. 24(a)(1)(c); see also Celske v Edwards, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose...has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED: June 26, 2017.

FOR THE COURT:

*s/Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE